CARNEGIE-ILLINOIS STEEL CORPORATION *v*. REVIEW BOARD OF INDIANA EMPLOYMENT SECURITY DIVISION ET AL.

[No. 17,545. Filed May 2, 1947.]

*White, Wright & Boleman,* of Indianapolis, *Paul R. Conaghan* and *Geo. Venea* with *Knapp, Cushing, Hershberger & Stevenson,* all of Chicago, for appellant.

*Blaz A. Lucas,* of Gary, and *Oliver A. Switzer, Amicus Curiae,* of South Bend, for appellees.

BOWEN, J.—This is an appeal from a decision of the Review Board of the Indiana Employment Security Division upon claims filed by a number of employees for unemployment benefits during the period of a work stoppage which occurred at the Carnegie-Illinois Steel Corporation Works at Gary, Indiana.

The facts are not in dispute, and show that the appellant was engaged in the manufacture of steel in its works at Gary, Indiana, and that there was a working agreement between the appellant and the United Steel Workers, C. I. O., Local 1014, which was the exclusive certified bargaining agent for the employees. A controversy arose between the appellant and the union over wages and working conditions. Negotiations were carried on between the union and the appellant from October 20, 1945, to January 20, 1946, when a strike was called, picket lines were established, and all production ceased on January 21, 1946. On February 18, 1946, an agreement was concluded between appellant and the union and the picket lines were removed and

production resumed. The parties to this cause stipulated that the strike terminated on February 18, 1946. After the work was resumed on February 18, 1946, there was a partial stoppage of work by some of the employees in the mason, billet and blooming departments. The stoppage in the mason department lasted for four days and for eight hours or more in the other departments. The record is not clear as to how many employees were involved in this stoppage of work, or whether a labor dispute caused the stoppage. These stoppages, however, had no substantial effect upon the general resumption of production. The evidence also showed that a full resumption of operations could not be had prior to March 16, 1946, and that the company had sufficient orders on hand during the period from January 10, 1946, to April 4, 1946, to provide full time employment for all employees at its Gary Steel Works. The evidence further showed that a substantial curtailment in production operations existed from January 10, 1946, to March 16, 1946. It is uncontradicted that the stoppage of work continued until March 16, 1946. Work was unavailable to appellees because it was necessary to have certain operations performed, such as the repair of coke ovens, hearths of blast furnaces, and other repair items necessary before appellant's works could resume production after the shut-down period of the strike. There were no claims made by appellees that any other causes other than the strike operated to cause the work stoppage up to March 16, 1946. Also, in the brief filed by the State Industrial Union Council affiliated with the C. I. O., the undisputed facts above were conceded in the following statement: "The question before the court is whether a stoppage of work immediately subsequent to a labor dispute which stoppage of work would not have occurred *except* (our

italics) for the labor dispute disqualifies employees involved in the labor dispute during the subsequent stoppage."

The Review Board made findings of fact and conclusions of law and held that all employees covered by the bargaining agreements were members of the bargaining unit regardless of their membership or non-membership in the union involved. That they (including appellees) belonged to a grade or class of workers of which immediately before the commencement of the stoppage, there were members employed at the establishment at which the stoppage occurred who were participating in, financing, and directly interested in the dispute. The Review Board further held that claimant C-1 and all claimants, including appellees (with the exception of certain claimants not involved in this appeal) who were members of the bargaining unit regardless of their membership in the unions which caused the stoppage of work due to a labor dispute were disqualified from January 21, 1946, to the week ending February 23, 1946, and that the labor dispute ended February 18, 1946. This part of the Board's decision is not in question in this appeal.

The Review Board further held that none of the claimants were disqualified for benefits under the provisions of § 7 (f) (3) of the Employment Security Act, after the week ending February 23, 1946. The Board held that the unemployment following the settlement of the labor dispute and resulting from the time required to place all parts of the employer's plant in operation because of its production methods, was not a stoppage of work caused by a labor dispute because under the terms and meaning of the Act, in order that workers may be disqualified under the provisions of § 7 (f) (3), both a labor dispute and a stoppage

of work must exist at the same time, or concurrently, before a worker is disqualified. There was a dissent by one member of the Review Board as to the part of the decision which held that the employees were not disqualified for benefits after the week ending February 23, 1946, and until March 16, 1946, the date upon which it was established that full production was resumed. The dissenting member held that the statute requires only a causal connection between the labor dispute and the stoppage of work and not a co-existence.

The issue presented by this appeal involves the claim of the appellees to unemployment benefits during the period immediately following the termination of the strike and labor dispute, the week ending February 23, 1946, and the time when it was established that full production was resumed in appellant's steel works on March 16, 1946.

The errors assigned for reversal are that (1) the final decision is contrary to law; (2) violates the provisions of the Constitution of Indiana; and (3) violates the provisions of the Constitution of the United States and § (1) of the 14th Amendment thereto.

The appellees in the instant case did not file briefs in response to appellant's brief, and except as to appellee the Review Board of the Indiana Employment Security Division, did not appear in person or by counsel at the time that oral arguments were had in this cause. Upon the entry of an order by the court for appellees to file a brief, the Indiana State Industrial Union Council, affiliated with the C. I. O., filed briefs on behalf of appellees, in response and answer to appellant's briefs, which briefs were designated as filed as *amicus curiae* by such organization. The matters in issue have therefore been fully presented, and by reason of the fact

that the issues herein are *sui generis,* they have been carefully and thoroughly considered by this court.

Considering the first assignment of error, did the Review Board err in its interpretation of § 7 (f) (3), § 52-1507, Burns' 1933 (Supp.) and was it correct in its legal conclusion that a labor dispute and a stoppage of work must exist at the same time, or concurrently before a worker is disqualified for benefits?

This section provides as follows:

"Disqualification for benefits. An individual shall be ineligible for waiting period or benefit rights:

"(3) for any week with respect to which the Board finds that his total or partial or part-total unemployment is due to a stoppage of work which exists because of a labor dispute at the factory, establishment, or other premises at which he was last employed; Provided, that this subsection shall not apply if it is shown to the satisfaction of the Board that: he is not participating in or financing or directly interested in the labor dispute which caused the stoppage of work; and he does not belong to a grade or class of workers of which, immediately before the commencement of the stoppage, there were members employed at the premises at which the stoppage occurs, any of whom are participating in or financing or directly interested in the dispute; and he has not voluntarily stopped working, other than at the direction of his employer, in sympathy with employees in some other establishment or factory in which a labor dispute is in progress; Provided, That if in any case separate branches of work which are commonly conducted as separate businesses in separate premises, are conducted in separate departments of the same premises, each such department shall, for the purposes of this subsection, be deemed to be a separate factory, establishment, or other premises."

We must recognize the fundamental rules of statutory construction. If a statute is plain and unambigu-

ous, courts must give it a literal interpretation ■ without construction limiting its extent or extending its operation. *McDaniels* v. *McDaniels* (1945), 116 Ind. App. 322, 62 N.' E. (2d), 876, 879; *State* v. *Mutual Life Ins. Co.* (1910), 175 Ind. 59, 93 N. E. 213; *Taelman* v. *Bd. of Fin. of School City of South Bend* (1936), 212 Ind. 26, 33, 6 N. E. (2d) 557.

Also, in case of ambiguity, we must, by all ■ aids available, ascertain and give effect to the intention of the legislature.

The appellant contends that the words used in the statute in question: "An individual shall be ineligible for waiting period or benefit rights . . .

"(3) for any week with respect to which the Board finds that his total or partial or part-total unemployment is due to a stoppage of work which exists because of a labor dispute at the factory, establishment, or other premises at which he was last employed . . ." are plain and unambiguous and that the word "exists" which is in the present tense refers to the stoppage of work, but that there is nothing in the language to suggest that the labor dispute which caused the stoppage must also carry the sense of the present tense. That the words "because of" strongly imply that the factors to be considered are to be limited solely to causal relationship.

Contrary to this, it is urged on behalf of appellees, that the words which occur later in the subsection of the same statute, that before an employee can be disqualified for *any* week (our italics) it must appear that he *is* (our italics) participating in or financing, or directly interested in the labor dispute which caused the stoppage, being in the present tense, mean that if there is no labor dispute during the week in question,

the employees could not be participating in a labor dispute. They urge that to arrive at the conclusion urged by the appellant that the language in the statute would have to read: "he is not or was not participating, etc. . . ." It is also asserted on behalf of appellees that in construing the section of the statute in question we must consider the objects and purpose of the Employment Security Act as set forth in the preamble thereof.

By reason of the foregoing contentions of the parties, we feel that it becomes necessary for us to ascertain the legislative intention in enacting the provisions of the statute in question.

Many states have passed statutes providing for unemployment benefits, some of which are patterned after the English statute which was adopted by Parliament 27 years ago [10-11 Geo. V, ch. 30 (1920), and amended 14-15 Geo. V, ch. 30 (1924)]

There are two types of statutes in the states and territories of this country dealing with disqualification for unemployment benefits. The one type such as the Wisconsin statute, § 108-04 (5) (a) of ch. 108 Wis. Stats. which provides for disqualification for benefits, "for any week in which such strike or other bona fide labor dispute is in *active progress* (our italics) in the establishment in which he is or was last employed," is in effect in a number of states. The other type is the one as is in effect in this state, and does not contain the words or requirement that a strike be in *active progress* in order to disqualify a worker for benefits. Considering the legislative history of such enactments it is not unreasonable to assume that if the legislature of this state had intended to require that a strike be in *active progress* in order to disqualify a worker for benefits that it would have enacted the *active progress* type

of statute. Similarly, we feel it is not unreasonable to assume that had the legislature intended that the stoppage of work and the labor dispute had to be co-existent, it would have made its intent clear through some lang-, uage such as the insertion of the word "existing" following the words "labor dispute" in the section in question.

There is a dearth of higher court decisions interpreting the type of statute which we have in Indiana as contrasted with the *active progress* type of statute as to disqualification for unemployment benefits. However, we feel it is important to note the trend of the few higher court decisions interpreting the provisions of the active progress type of statute.

The Supreme Court of the United States (*Unemployment Comp. Com.* v. *Aragan* (1946), 67 S. Ct. 245, 91 L. Ed. 143) interpreted an Act which contained an active progress type of labor dispute qualification. In that case, negotiations over wages, hours, and conditions of employment were conducted by employers engaged in salmon fishing, canning, and marketing. The employer and union came to an impasse upon the question of wages and other conditions of employment. Because of the seasonal nature of the business, the companies notified the union that if operations were to be carried on during the 1940 season, agreements would have to be reached on or before certain deadlines. The negotiations were continued but no agreements were reached when the deadlines arrived. It was urged on behalf of the claimant employees that there was no labor dispute in active progress within the meaning of the Act after the passage of the deadline dates. The Supreme Court in its opinion stated, "The Commission (Alaska) apparently views a dispute as "active" during the continuance of a work stoppage

*induced* by a labor dispute . . . . We see nothing in such a view to require our substituting a different construction from that made by the Commission entrusted with the responsibility of administering the statute." (Our parentheses and italics.)

In cases in Wisconsin and Michigan, the higher courts considered statutes providing for disqualification for unemployment benefits where such unemployment is due to a labor dispute which is actively in progress in the establishment in which the worker is or was last employed. The word "establishment" was broadly construed to include disqualification for workers in all of the plants of individual companies in cases where a labor dispute was in active progress in one of the plants of such companies because of the "physical proximity," "functional integrity" and "general unity" of all of such plants. *Spielman* v. *Industrial Comm.* (1940), 236 Wis. 240, 295 N. W. 1; *Chrysler Corp.* v. *Smith* (1941), 297 Mich. 438, 298 N. W. 87.

We refer to the foregoing authorities merely to show the trend of the decisions relative to the interpretation of the disqualification clause, in the few instances where such statutes have been construed. We wish to point out, however, that in the instant case there is no claim made that the Gary Steel Works is not functionally integrated, and it is undisputed that under the issues we must consider it as a single unit.

It is contended on behalf of appellees that the Employment Security Act should be given a broad and liberal construction in favor of the employee in order that the humane purposes for which it was enacted may be realized, citing *Montgomery* v. *Brown* (1940), 109 Ind. App. 95, 27 N. E. (2d) 884; *Fashion Thimble Shoe Co.* v. *Withrow* (1942), 110 Ind. App. 668, 40 N. E. (2d) 359, and we certainly agree

with this general proposition of law. However, we must also recognize that, "the liberal rule of construction only requires that a statute be so enforced as to carry into effect the will of the legislature as expressed in the terms thereof, and to give, not stintedly or niggardly, but freely and generously, all the statute purports to give." 25 R. C. L., p. 1076. "It is not within the province of the court to take from or enlarge the meaning of a statute by reading into it language which will, in the opinion of the court, correct any supposed omissions or defects therein." *Pere Marquette R. R. Co. of Ind.* v. *Baertz* (1905), 36 Ind. App. 408, 414, 74 N. E. 51; *Rogers* v. *Calumet National Bank* (1937), 213 Ind. 576, 12 N. E. (2d) 261.

The statute in the instant case provides for a disqualification for benefits when the unemployment is due to a stoppage of work which exists because of a labor dispute.

The word "because" in the statute means "by reason of." The legislature intended to disqualify workers for benefits where the stoppage of work was caused by a labor dispute under the conditions set forth in § 7 (f) (3) of the Act, even though such stoppage and dispute were not concurrent. The stoppage of work must exist during the week for which benefits are claimed, but not necessarily during the existence of the labor dispute. It is reasonable to assume that if the legislature had intended the stoppage of work and labor dispute had to exist at the same time, it would have so stated in the Act.

The Review Board in the present case did not find that the stoppage of work resulted from any other cause except the labor dispute. The evidence was uncontradicted that employment was not available and the stoppage of work existed at the time because of the

labor dispute which occasioned the shut-down of the appellant's steel works. This is conceded in briefs filed on behalf of the appellees. The evidence was uncontradicted that the appellant had sufficient orders on hand during the entire period of the work stoppage to provide full employment for all its employees at its Gary Steel Works. The record shows that a substantial curtailment in production operations constituting a stoppage of work existed during the entire period up to March 16, 1946.

Stoppage of work has been held to mean since the passage of the Indiana Employment Security Act a curtailment of production affecting unemployment rather than a plant-wide stoppage. Appeal Tribunal Decision No. 40-LD-27, Supplement No. 2, dated October 18, 1940. A stoppage of work commences at the plant of the employer when a definite check in production operations occurs. A stoppage of work ceases when operations are resumed on a normal basis. Appeal Tribunal Decision No. 40-LD-102, dated February 7, 1941, CCH Unemployment Insurance Service, Vol. 3, Ind., Par. 1980.09.

The only factors which could have caused the stoppage of work as shown by the record were the conditions in the plant which existed because of the shut-down of the plant by reason of the labor dispute, and the time necessary to repair coke ovens, the hearths of blast furnaces, and other repair items necessary before production could be resumed after the shut-down.

We hold that the Review Board was in error, in its conclusion, that the unemployment following the settlement of the labor dispute and resulting from this fact, was not due to a stoppage of work caused by a labor dispute. We further hold that considering the legislative history of employment secur-

ity acts, and the provisions of the Indiana Employment Security Act, and the Section in question, § 7 (f) (3), and the legislative intention as expressed in the terms of the Act, that the Review Board was in error in concluding that a stoppage of work must exist at the same time, or concurrently, before a worker is disqualified.

It is pointed out on behalf of appellees that to rule that a worker is disqualified after a labor dispute is settled, and during that period that the employer is in the process of resuming normal operations would create a virtually unenforceable administrative task. That the employer may claim there is difficulty in securing new orders and in recovering lost trade, and may assert other economic factors. We recognize the administrative difficulties involved and we wish to further assert that by this opinion we do not mean to hold that the stoppage of work caused by a labor dispute continues in every case until the employer resumes normal operations. The test is not the resumption of operations by reason of the control or decision of the employer, or conditions and speculative factors allegedly asserted by the employer. It must be limited to the delay directly and proximately caused by the labor dispute and the physical factors and conditions created as the direct and natural consequences of the labor dispute. The stoppage of work caused by a labor dispute under such circumstances must not exceed the time which is reasonably necessary and required to physically resume normal operations in such plant or establishments.

While the administrative task is great, with the aid of engineering and technical facilities and testimony available to the parties and the Review Board in any case, it would be possible for the Board to determine

the time which is reasonably required to place a plant in operation under all the circumstances, directly and proximately caused by the labor dispute. In passing upon a similar difficulty, the United States Supreme Court stated, "The Board we believe, overestimates administrative difficulties and underestimates its administrative resourcefulness." *Phelps Dodge Corp.* v. *Labor Board* (1940), 313 U. S. 177, 197.

Appellees contend that there can be no constitutional question involved for the reason that the appellant has no proprietary interest in this case, and in any case involving the payment of unemployment compensation benefits. They contend that monies paid into the Employment Security trust fund are in the nature of a tax and cannot be recovered by the employer or controlled by the employer in any respect, and that the employer has only a remote interest in the solvency of the fund in that he may or may not be able to obtain lower tax rates.

In the case of *Chrysler Corp.* v. *Smith, supra,* the court passed upon this question in a case involving unemployment compensation benefits and stated: "Claimants question the right of the Chrysler Corporation to appear and contest their right to awards. This requires but short answer. As a contributor to the fund, having an interest in its disbursement, it was the right of the corporation, if not its duty, to see that the purpose and full integrity of the fund was preserved."

Under the Indiana Employment Security Act, an employer contributes to the fund and has such an interest in its disbursement, and as appellees admit, may be financially affected thereby in the form of lower rates. This is clearly a sufficient proprietary interest to maintain this appeal.

The appellees also claim that if the contention of the appellant is sustained it would constitute an unconstitutional discrimination against the appellees because, it would be disqualifying them for a longer period of time than the striking members of another employer who can immediately resume normal operations at the termination of a labor dispute. In our opinion, there is, by virtue of the statute, and our interpretation thereof, no discrimination between workers in a steel plant, and in other plants where normal operations can be immediately resumed; because, by our decision herein, the labor dispute must be the direct and proximate cause of the stoppage of work causing the unemployment for which benefits are claimed. The stoppage of work must be in the direct and natural consequence of the labor dispute. Therefore, the statute does not discriminate, but all persons are given equal treatment and protection under the law.

We feel that our construction of the statute is in strict accordance with the plain language of it, and our interpretation is not inconsistent with the objects and purposes of the Act as expressed in its preamble. There was a stoppage of work within the purview of the statute caused by a labor dispute until March 16, 1946. The appellees were, therefore, not entitled to benefits after the week ending February 23, 1946. The decision of the Review Board of the Indiana Employment Security Division allowing such benefits, and holding appellees not disqualified after the week ending February 23, 1946, is hereby reversed, and said Board is hereby directed and ordered to enter a decision denying benefits to appellees in accordance herewith.

NOTE.—Reported in 72 N. E. (2d) 662.