GENERAL ELECTRIC COMPANY *v.* REVIEW BOARD OF
INDIANA EMPLOYMENT SECURITY DIVISION ET AL.

[No. 19,258. Filed August 5, 1959.]

*George P. Ryan, Alan T. Nolan* and *Ross, McCord, Ice & Miller,* of counsel, all of Indianapolis, for appellant.

*Edwin K. Steers,* Attorney General, *Keith Campbell* and *Robert W. McNevin,* Deputy Attorneys General, for appellees.

SMITH, J.—This is an appeal by the General Electric Company from a decision of the Review Board of the Indiana Employment Security Division. Although this appeal is concerned solely with a procedural question, it arises out of a dispute as to the status of an employee of the appellant under the Indiana Employment Security Act. Such employee and the Review Board appear herein as appellees.

The claimant-appellee, Edwina E. Wendholt, was first employed by the appellant on August 17, 1953. On May 2, 1958, claimant-appellee voluntarily quit her employment, giving as her reason for quitting the fact that she was unable to secure the services of a "baby sitter" to care for her child.

On May 23, 1958, three weeks following the date on which claimant-appellee voluntarily quit her employment, the Vincennes Claims Deputy of the Indiana Employment Security Division ruled, in an ex parte proceeding, that the claimant-appellee had quit her employment voluntarily "but with good cause, due to the loss of her baby sitter." At the same time, the Claims Deputy ruled that the claimant-appellee was not available for suitable work under the provisions of the Indiana Employment Security Act. Accordingly,

in this ex parte stage of the proceedings, the Claims Deputy denied immediate benefits to the claimant-appellee because she was unavailable for work. However by such ruling, he left appellant's compensation fund subject to later charges as a result of claimant-appellee's unemployment by not imposing any disqualification upon her as a result of her quitting her employment.

Following the determination of the Claims Deputy and because that determination did not impose any disqualification on the claimant-appellee, the appellant duly requested a hearing before a Referee of the Indiana Employment Security Division. In its request for hearing, appellant contended that the Claims Deputy had erred in his decision that claimant-appellee had voluntarily quit her employment *with good cause,* and affirmatively contended that claimant-appellee's quitting was *without good cause.*

On June 20, 1958, and without any decision on the merits by the Referee, the appellant's appeal to the Referee was dismissed by the Referee on the ground that the appellant "did not suffer any loss as a result of the (Claims) Deputy's determination" and was without capacity to appeal *from the Claims Deputy to the Referee.* In substance the Referee's ultimate decision was that the "(Claims) Deputy's determination is final."

Following the decision of the Referee, appellant duly filed its appeal to the Review Board of the Indiana Employment Security Division. Under date of August 27, 1958, and following oral presentation to the Review Board, the appeal to the Review Board was dismissed on the ground that appellant did not have the capacity to appeal *from the Referee to the Review Board.* Accordingly, the Review Board in substance

affirmed the Referee's ruling that appellant was without capacity to appeal *from the Claims Deputy to the Referee.*

As the result of the foregoing history of this case, it appears that the only consideration of the merits of this case has been the ex parte consideration of the Claims Deputy. The appellant contends that it has been denied the right to an appeal on the merits from that ex parte determination to the Referee. The primary issue to be decided by this appeal is whether or not the law provides the appellant a right to review before the Referee of an ex parte decision on the merits made by the Claims Deputy; and incidentally involved are the separate questions of appellant's right to appeal from the Referee to the Review Board and from the Review Board to this Court.

The appellant's assignment of errors has one specification, namely: That the decision of the Review Board of the Indiana Employment Security Division in proceedings below is contrary to law.

The appellant urges that it had a statutory right to appeal from the Claims Deputy to the Referee; that it had a separate statutory right to appeal from the Referee to the Review Board because appellant was adversely affected by the Referee's decision in that the Referee by his ruling deprived appellant of its statutory right to appeal from the Claims Deputy to the Referee and deprived appellant of the protection of its contribution fund; and finally, the appellant contends that it has a separate statutory right to appeal to this Court because it was a party before the Review Board and was prejudiced by the Review Board's action in that the appellant was again deprived of its statutory right to appeal from the Claims Deputy to

the Referee and was again deprived of the protection of its contribution fund.

In accordance with its fundamental legislative purpose of providing benefits for persons "unemployed through no fault of their own," the Indiana Employment Security Act contains a series of conditions and disqualifications for eligibility. See, §52-1525 *et seq.*, Burns' 1951 Repl. These conditions and disqualifications operate in a given case to determine the benefit status of a particular unemployed person.

As related to the case at bar, two of the statutory conditions and disqualifications are involved in two sections of the Indiana Employment Security Act. One section concerns employees who voluntarily quit their employment without good cause and the other section concerns employees who are unavailable for work.

The first section involved is §52-1539, Burns' 1951 Repl. (1957 Supplement) which reads as follows:

> "An individual shall be ineligible for waiting period or benefit rights: For the week in which he has left work voluntarily without good cause . . . and for all weeks subsequent thereto until such individual has thereafter earned remuneration equal to not less than ten times his weekly benefit amount in employment . . . ."

Under the provisions of this section, if an employee leaves work voluntarily *with good cause,* he is immediately eligible for benefits. However, if an employee leaves work voluntarily *without good cause,* benefits are denied that employee until he has earned remuneration equal to at least "ten times his weekly benefit" amount.

The second section involved is §52-1538b, Burns' 1951 Repl. (1957 Supplement) which reads as follows:

> "An unemployed individual shall be eligible to

receive benefits with respect to any week only, if: He is . . . available for work . . . ."

Under the provisions of this section, regardless of whether an employee has quit his employment with or without good cause, he cannot be paid benefits unless he is available for work within the meaning of this section.

As indicated by the existence of the two above quoted sections of the Indiana Employment Security Act, in a given case the status of an employee is required to be determined with reference to the inter play of said two sections. Thus, an employee who is unavailable for work within the meaning of §52-1538b is not entitled to the payment of benefits during the period of such unavailability. However, when such an employee again becomes available for work, his eligibility for benefits depends on whether he quit his last job with or without good cause under the provisions of §52-1539. In a given case inquiry must be made as to the status of the employee under *both* sections of the act above quoted in order to determine the status of that employee.

The appellant contends that basically the Indiana Employment Security Act is a taxing statute. That it imposes a tax, referred to in the act as "contributions," on employers subject to its terms, and that from these "contributions" unemployment benefits are paid to employees who lose their employment and who meet the statute's conditions of eligibility for benefits. See §§52-1534 and 52-1536a, Burns' 1951 Repl. (1957 Supplement). From an examination of the Indiana Employment Security Act in its entirety, it appears to us that this contention of the appellant is well taken and is a logical interpretation of the effect of the Act. The significant factor con-

cerning an employer's contributions is that the amounts thereof are not static. An "experience rating" system is provided in the Act under which, depending upon an employer's benefit experience, reduced contribution rates result for that employer; and, since benefits paid to an employee are charged against the experience account of that individual's employer, the employer's future contribution rate is affected by the extent to which benefits are paid to said employee. See, §52-1535b, Burns' 1951 Repl. (1957 Supplement). Thus, for example, an employee who is unavailable for work is not entitled to the immediate payment of unemployment compensation because of such unavailability. This protects his employer's experience account and prevents an increase in his employer's contribution rate. Similarly, when such employee again becomes available for work, whether or not he is at once eligible for benefits depends upon whether or not he quit his prior employment *with* or *without* good cause. It is, therefore, our conclusion that, accordingly, just as an employer's experience and contribution rate is affected by an employee's unavailability for work, so an employer's experience and contribution level is affected by whether or not that employee quit his employment *with or without* good cause.

Because this appeal deals primarily with a question of procedure a consideration of the procedural provisions of the Indiana Employment Security Act is necessary for a proper determination of the questions involved. The statute contains comprehensive procedural provisions in which questions of eligibility and disqualification of employees are determined. In a case such as the case at bar, these procedures begin with the filing by an employee of a claim for benefits pursuant to the provisions of §52-1542, Burns' 1951 Repl.

(1957 Supplement). This filing is with a Claims Deputy who makes an ex parte determination of the claim without a hearing. Following this initial and informal determination of the question of benefits, the appellate procedures provided in the statute are as follows:

1. An appeal to a Referee. This procedure arises out of the following language of the statute:

> "In cases where the eligibility or disqualification of an individual is disputed, the Division shall promptly notify the claimant and employer or employers directly involved or connected with the issue raised . . . of the determination (of the Claims Deputy) and the reasons therefor. Unless the claimant or such employer . . . asks a hearing before a referee thereon, such decision shall be final . . . . If such hearing is desired, the request therefor shall be filed . . . ." See §52-1542a, Burns' 1951 Repl. (1957 Supplement).
> "Unless such request for hearing is withdrawn, a referee, after affording the parties a reasonable opportunity for a fair hearing, shall affirm, modify or reverse the findings of fact and decision of the deputy." See, §52-1542b, Burns' 1951 Repl. (1957 Supplement).

2. An appeal from the Referee to the Review Board. This procedure is contained in the following language of the statute:

> " . . . The parties shall be duly notified of such decision (of the referee) and the reason therefor, which shall be deemed to be the final decision of the Review Board, unless . . . an appeal is taken by the Board or the Director or by any party adversely affected by such decision to the Review Board." See, §52-1542b, Burns' 1951 Repl. (1957 Supplement).

3. An appeal from the Review Board to the Appellate Court. This appeal is provided for in the following language of the statute:

"Any decision of the Review Board shall be conclusive and binding as to all questions of fact. Either party to the dispute, the Board or the Director, may . . . appeal the decision to the Appellate Court for errors of law under the same terms and conditions as govern appeals in ordinary civil actions." See, §52-1542k, Burns' 1951 Repl. (1957 Supplement).

As indicated by the above statutory provisions, the Act provides three separate appellate steps, and the conditions of each of the appellate steps are separately provided for; and the capacity of a party to invoke each separate appellate step is separately specified.

In the case at bar, the Claims Deputy determined that the appellee-claimant was unavailable for work as of the time of her quitting her employment, and she was thus denied the immediate payment of benefits. However, the Claims Deputy also found that she had quit her job *with* good cause. Because of this latter ruling, as soon as she again becomes available for work she will be eligible to receive benefits chargeable to the appellant, instead of being required to earn at least "ten times her weekly benefit" amount before acquiring such eligibility. This ruling, in turn, deprives the appellant's experience and contribution level of the protection which that "earnings requirement" would have provided. Accordingly, so as to protect its level of contribution, appellant sought an appeal to the Referee of the "with good cause" determination of the Claims Deputy. It seems apparent that appellant's right to an appeal to the Referee is plain in the statute. Thus, as provided in §52-1542a, "the eligibility" of the claimant-appellee was "disputed" and appellant was "directly involved or connected with the issue raised" because its experience rating and level of con-

tributions were involved. Appellant duly requested the appellate hearing before the Referee; however, the Referee dismissed the appeal and thus deprived appellant of its statutory right of appeal to the Referee. Although the above quoted statutory provisions, concerning an appeal from the Claims Deputy to the Referee, appear to be plain and unambiguous on their face, that they entitle appellant to a decision on the merits by the Referee is also supported by the regulations of the Indiana Employment Security Board. Regulation No. 1001 provides as follows:

> "Any interested party in the claim of an employee shall be entitled to a hearing before a referee relative to the merits of the claim.
> "An 'interested party' shall mean and include . . .
> (b) any employer whose account may be affected . . .
> (c) any employer in the claimant's base period . . .
> (e) the claimant's last or separating employer."
> See, *Rules and Regulations of the Indiana Employment Security Board, Indiana Employment Security Division, Indiana State Employment Service,* issued July, 1957, page 67.

In the case at bar, the appellant was an employer whose account was subject to the charge of compensation paid to the employee, the appellant was also an employer in the claimant's base period, and the appellant was the claimant's last and separating employer. Accordingly, on all three accounts, appellant qualified as "an interested party," entitled under the regulations to a hearing before the Referee "relative to the merits of the claim."

It is our conclusion that the statutory provisions and the Board's own interpretation of that statute

answers the question of whether or not appellant was entitled to a hearing and decision on the merits before the Referee. However, logical considerations support this conclusion. As has already been pointed out above, whether or not the claimant-appellee was disqualified for benefits until having earned "ten times her weekly benefit" amount affects appellant's level of contributions. Accordingly, by any standard, appellant has an interest in the determination of the question of whether or not appellant is subject to the disqualification. In connection with the imposition of taxes and like liabilities, our system of law frowns on ex parte determinations without the taking of evidence, an opportunity to confront witnesses and the right to cross-examination. Concern for these traditional requirements is the reason that the statute here plainly entitled appellant to an effective appeal to the Referee. These traditional requirements are also the reason that the Board itself has issued Regulation No. 1001, as quoted above, interpreting the statute as entitling appellant to an appeal and a decision on the merits. In the light of these traditional requirements, incorporated in the statute and regulations, it is our opinion that the Review Board erred when it did not reverse the Referee and require him to hear and determine this appeal on the merits.

Although the issue tendered to the Review Board by appellant was its right to appeal *from the Claims Deputy to the Referee,* the Review Board considered only the question of appellant's right to appeal *from the Referee to the Review Board.* This latter issue turns on different statutory provisions which separately define the capacity of appellant to appeal to the Review Board. It is the contention of

the appellant that the Review Board erred on the separate question of appellant's right to appeal *from the Referee to the Review Board.* As provided in the above quoted §52-1542b, Burns' 1951 Repl. (1957 Supplement), appeal to the Review Board lies for "any party adversely affected" by a decision of the Referee. Regulation No. 1007, issued by the Indiana Employment Security Board, has interpreted this provision as granting an appeal to the Review Board to "either party" to the case before the Referee. It is a fact that appellant was a party to the case before the Referee, and, in addition, it appears was adversely affected by the Referee's decision in two respects. The first of the adverse effects on appellant from the Referee's determination was his denial to appellant of its statutory right of an appeal to him from the Claims Deputy. As stated above, this right is plain in the statute and absent this right, a question concerning appellant's contribution level has been determined before the Claims Deputy in an ex parte proceeding of the type not favored in the law. It is our conclusion that any party which has been denied a procedure which the statute grants him is, by that fact, "adversely affected" within the meaning of the statute. The second adverse effect of the Referee's determination arises out of the substantive provisions of the statute. As explained before in this opinion, the Referee's denial of appellant's right to appeal to him finalized the Claims Deputy's determination. That determination, in turn, deprived appellant of the "ten times weekly benefit" protection of its fund. Accordingly, appellant was adversely affected by the Claims Deputy's result in that appellant's contribution level was jeopardized thereby. It is our opinion, that based upon the foregoing, the appellant, before the Review

Board, has been deprived by the Referee of both procedural and substantive protections of the statute. Either one of these adverse effects is sufficient to support the appellant's appeal to the Review Board.

The appellees urge that the controlling issues in the case at bar were decided adversely to the appellant in the case of *Youngstown Sheet and Tube Company* v. *Review Board of the Indiana Employment Security Division et al.* (1954), 124 Ind. App. 269, 116 N. E. 2d 648. They contend that the appellant has not shown how it has been prejudiced or aggrieved. They admit that the appellant does have an interest in the disbursement of the funds allocated to its experience account, but deny that the appellant has shown wherein said funds have been affected in any way by the action and decision of the Claims Deputy, Referee or Review Board. They state that this Court should not be placed in the position of having to decide a question concerning a potential or threatened depletion of the appellant's experience account; and that until such time as the claimant-appellee comes back into the labor market and makes a claim for benefits and such benefits are allowed, then only at that time will the appellant suffer any actual prejudice or grievance for which the appellant should be entitled to relief. They claim that to hold otherwise this Court would be required to modify or overrule the decision in the *Youngstown* case. With this contention of the appellees the Court cannot agree. From an examination of the decision in the *Youngstown* case, it appears that the decision is concerned with the question of appeal to this Court as distinguished from appeal to the Referee or the Review Board. It is our conclusion that the decision in the *Youngstown* case may be distinguished from the case at bar in two respects. In the first place, in the

Youngstown case there has been no denial to any party of its right to appeal to the Referee or to the Review Board. Accordingly, the *adverse effect* of such denials which exists here did not exist in the *Youngstown* case and that case had no application to the instant appeal. The second basis for distinguishing the *Youngstown* case arises out of its peculiar facts. The *Youngstown* case involved the statutory provisions concerning quitting work with or without good cause and unavailability for work, the same statutory provisions that are here involved. But both of these statutory provisions were involved in a claim for benefits during a fixed period of time, March 30, 1952 to May 8, 1952. At the time of the decision, §52-1539, Burns' 1951 Repl., provided that an employee who left work voluntarily without good cause was disqualified for benefits for the week in which he left and for the "five (5) next following weeks." It will be noted that this six weeks disqualification period under the statute constituted the fixed period of time involved in the *Youngstown* eligibility claim and during the same *period of time* the claimant was unavailable for work. Accordingly, under either the unavailability of work provision of the statute or the provision concerning quitting work without good cause, the claimant in the *Youngstown* case was disqualified to the same extent and for the same specific time period which was involved in that case. For this reason, the Court in the *Youngstown* case stated that the findings and conclusions of the Review Board concerning the claimant's quitting work with or without good cause were "mere surplusage and . . . not germane to the issue involved by the filing of the claimant's application."

To sustain our position in the instant case, we do not feel it is necessary to disturb the decision reached

in the *Youngstown* case. Since the disqualification of the claimant in the *Youngstown* case was precisely the same under either statutory provision, and since the Review Board had found that the employee was disqualified under one of said provisions, the employer in the *Youngstown* case was literally unharmed by the finding under the other of said provisions that the employee had left his employment with good cause. The latter finding did not jeopardize the employer's fund or level of contributions and had no adverse effect on the employer. The controlling factor is that the instant case differs from the *Youngstown* case in that §52-1539, Burns' 1951 Repl., has since been amended with the substitution of the "ten times weekly benefit" disqualification in place of the fixed period of weeks disqualification. In addition, no fixed period of time is involved in the claim filed by the claimant-appellee in the instant case. Accordingly, the finding here that the employee was unavailable for work but had quit work *with good cause* does *adversely* affect the appellant and deprives its contribution level of the "ten times weekly benefit" protection. It is our conclusion that the finding on the question of the claimant-appellee's quitting work with good cause is not surplusage here and is a finding which the appellant has an interest in reversing.

Finally the appellant anticipated in its brief that the appellees would challenge the appellant's right to appeal from the decision of the Review Board to this Court. This the appellees did not directly and specifically do. However, by urging that the issues in the *Youngstown* case were decided adversely to the position of the appellant in the instant case, the appellees have indirectly challenged the right of the appellant to appeal to this Court; for, as previously

indicated in this opinion, the decision in the *Youngstown* case is concerned primarily with the question of the right of appeal from the Review Board to this Court. Whether or not appellant has such a right depends upon the application of §52-1542k, Burns' 1951 Repl. (1957 Supplement) as quoted in this opinion. This section of the statute permits "either party to the dispute to appeal from the Review Board to this Court with respect to errors of law under the same terms and conditions as govern appeals in ordinary civil actions." In ordinary civil actions, it is the general rule in the State of Indiana that capacity to appeal from a judgment requires that the appellant have "a substantial interest in the subject matter of the litigation and that he be prejudiced or aggrieved from the judgment or decree from which he seeks to appeal." *Clay et al.* v. *Hamilton* (1945), 116 Ind. App. 214, 220, 63 N. E. 2d 207, 209; *Seitz* v. *Kothe-Wells and Bauer* (1919), 70 Ind. App. 200, 202, 123 N. E. 228. Accordingly, appellant here must show two things, namely: An interest in the subject matter, and that it has been prejudiced or aggrieved by the action of the Review Board. In the case of *Carnegie-Illinois Steel Corporation* v. *Review Board et al.* (1947), 117 Ind. App. 379, 393, 72 N. E. 2d 662, 668, this Court identified the interest which an employer has in the subject matter of a case under the Indiana Employment Security Act. This Court spoke as follows with respect to the question of an employer's interest:

> "As a contributor to the fund, having an interest in its disbursement, it was the right of the corporation, if not its duty, to see that the purpose and full integrity of the fund was preserved.
>
> "Under the Indiana Employment Security Act, an employer contributes to the fund and has such

> an interest in its disbursement, and, as appellees admit, may be financially affected thereby in the form of lower rates. This is clearly sufficient proprietary interest to maintain this appeal."

As to the second requirement that it has been prejudiced or aggrieved by the action of the Review Board, appellant not only has suffered a threat to its level of contributions but also has been deprived of its statutory right to appeal *from the Claims Deputy to the Referee.* It is our conclusion that, in the light of the traditional disfavor which ex parte proceedings have in our system of law, the denial to the appellant of a statutory right to a fair hearing constitutes a prejudice entitling the appellant to the right of appeal to this Court.

The ruling and decision of the Review Board is reversed and the cause is remanded to the Review Board with instructions to direct the Referee to entertain appellant's appeal from the Claims Deputy and to hear and determine the cause as provided by the statute. The statutory rights of appeal therefrom are hereby preserved in all parties hereto.

Gonas, C. J. and Kelley and Bierly, JJ., concurring.

NOTE.—Reported in 160 N. E. 2d 208.