138 Ind. App. 528 (1966)
215 N.E.2d 355
JACKSON
v.
REVIEW BOARD OF INDIANA EMPLOYMENT SECURITY DIVISION ET AL.
No. 20,295.
Court of Appeals of Indiana.
Filed March 31, 1966.
*529 Ralph R. Blume of Nieter, Smith, Blume & Wyneken, of Fort Wayne, and Judson F. Haggerty, of Indianapolis, for appellants.
John J. Dillon, Attorney General, Keith Campbell, Deputy Attorney General, and Barrett, Barrett & McNagny, of counsel, of Fort Wayne, for appellees. J.A. Bruggeman, of Fort Wayne, for appellee, Slicks Laundry.
BIERLY, J.
Claimant-appellants variously applied for benefits under the Indiana Employment Security Act on March 9, 1964, to March 25, 1964. These applications were denied and benefit rights were suspended by the local deputy on the ground that the appellants had voluntarily left their work without good cause on June 12, 1963. The determination by the local deputy was affirmed by a referee and the decision was subsequently modified by the Review Board which ruled that the appellants left their work voluntarily without good cause on March 6, 1964, rather than June 12, 1963, and that appellants are disqualified for benefits for the week ending March 7, 1964, and until they have earned ten times their weekly benefit amount in defined employment.
There is no material dispute concerning the factual situation. Appellants were laundry workers and were employed by Slicks Laundry in the City of Fort Wayne, Indiana. Slicks Laundry employed a total of seventy-six (76) such workers.
Local 3017, of the Laundry and Dry Cleaning Workers Union, AFL-CIO, was attempting to organize and be recognized as the collective bargaining agent for the laundry employees, which union had previously been declined recognition. It appears that approximately forty-eight (48) out of seventy-six (76) such workers, normally employed by this firm signed authorization cards with the laundry workers union. On *530 June 12, 1963, appellants and forty-one (41) other such workers went on strike and formed a picket line at the employer's premises to induce recognition of Local 3017 as the collective bargaining agent. The strike and all picketing ceased on March 6, 1964, when the employer and Local 3017 entered into a consent election agreement and set the election to be held on June 26, 1964.
John Slick, president of Slicks Laundry, testified that forty-seven (47) of the seventy-six (76) persons normally employed went on strike; that after the strike started he employed forty-seven (47) more people; that there was no interruption in the output and that the operation of the laundry was never down an hour; and that the forty-seven (47) employees were all replaced within a week's time. John Slick also stated that the appellants have not asked him for work during or after the strike, but in any event he said there was nothing available at that time.
Roosevelt Jackson, one of the strikers, testified that he called John Slick after the strike was over and inquired as to whether he would be permitted to go back to work; that he also inquired as to jobs for the other strikers; and that John Slick told him jobs were not available. The appellants were allowed to vote in the consent election held on June 26, 1964, and were designated as "pickets" and not as employees.
The local deputy in his determination of eligibility concluded that there was no labor dispute, that there was no stoppage of work, and that the appellants left work voluntarily without good cause on June 12, 1963. Upon appeal to the referee of the Indiana Employment Security Division, the referee concluded that:
"It is found that there has been no work stoppage at this employer's premises. No bargaining agent has been established under an election of the employees. The Labor Dispute Section of the Act is not applicable in this instance due to the absence of these factors. In the absence of the claimants having immediate and definite prospects of securing more suitable work, it is held that they left work *531 voluntarily and without good cause. There is no showing that the pay of these claimants was reduced at the time they quit their jobs."
The referee held that the Labor Dispute Section was not applicable due to the absence of the factors of stoppage of work, and that no bargaining agent had been established. Evidently, the referee was of the opinion that a bargaining agent was essential in order to establish a labor dispute.
The Review Board entered Findings and Conclusions as follows:
"1. The claimants' unemployment beginning June 12, 1963, was due to a stoppage or curtailment of work that existed because of a labor dispute at the employer's establishment. Even if the plant was `never down an hour,' and the 47 striking employees were replaced `within a week's time,' it is not reasonable that there was not some interruption and curtailment of work for however short a time. It would not have been necessary to replace the 47 strikers, if their absence had been without effect. The claimants participated in an actual strike and they are not subject to benefit penalty under § 1501 of the Act as having voluntarily left their work without good cause on June 12, 1963.
"2. It is not evident the employer permanently replaced the claimants, or that the employer had no work available for the claimants after the strike ended on March 6, 1964.
"3. The claimants made no inquiry of their employer about returning to work, nor made any attempt to return to work after March 6, 1964.
"4. The employer never having notified the claimants they were replaced, or that they were discharged, or that he would never take them back, the claimants were not warranted in remaining away from their work after March 6, 1964. Having the right to strike and their strike having ended, it was the responsibility of the claimants to promptly return to their work, and in not returning to their work they voluntarily left it. If the claimants assumed it was useless to even inquire about returning to work, their assumption is not substantiated by the evidence. The instant case is distinguishable from 62-R-29, 36, 70 wherein the claimants presented themselves to their employer for work promptly upon the cessation of the strike, but the employer refused *532 to take them back which refusal put the onus for their unemployment upon the employer. The instant case is also distinguishable from those of large industries where, after a long strike, workers have to wait to be recalled until production stages are resumed and the employer is prepared for them to return.
"5. The claimants had the burden of proving that their unemployment after they filed their several claims was due to circumstances beyond their control. Not having been actually or constructively discharged, the claimants alternatively left their work voluntarily, with or without `good cause.' The Review Board finds that, in not returning to their work after March 6, 1964, and in remaining unemployed of their own volition, the claimants each voluntarily left her work as of March 6, 1964, without good cause shown therefor."
The local deputy and the referee determined that there was not a stoppage of work or a labor dispute, and that appellants left their work voluntarily and without good cause. The Review Board reversed both of these findings and instead thereof found that there was a labor dispute, and a stoppage or curtailment of work. On this basis appellants were denied benefits from June 12, 1963 to March 6, 1964 when the strike ended. Thereafter appellants were denied benefits on the basis that they did not request to return to work, thereby leaving their work voluntarily and without good cause.
Appellants in their brief appear to argue in the alternative two separate propositions. First, appellants assert that they are entitled to the benefits of the Employment Security Act, because while engaged in an authorized strike they were replaced and discharged by their employer and were unemployed for reasons solely within the control of the employer. Second, appellants argue that the Labor Dispute Section (§ 52-1539c, Burns' 1964 Replacement) is not applicable because there was not a stoppage of work resulting from a labor dispute, which is an essential element for ineligibility for benefits within the provisions of this section.
*533 The position of the Review Board is that appellants left their work voluntarily at the end of the strike, and during the strike there was a stoppage of work caused by a labor dispute.
At the outset it should be made clear that any question as to the merits of the strike is not germane to this appeal. Our decision is limited to a determination as to whether the appellants are entitled to benefits under the Indiana Employment Security Act. Whether the Act should compensate employees in this position is a matter for the General Assembly. While the question presented is apparently a question of first impression in this state it is not one that requires abstruse reasoning or philosophical adventure. Further, in reconciling this question we feel free to adopt a position which carries forth the purpose of the Indiana Employment Security Act. Article I of the Act being § 52-1525, Burns' 1964 Replacement, provides as follows:
"As a guide to the interpretation and application of this act, the public policy of this state is declared to be as follows: Economic insecurity due to unemployment is declared hereby to be a serious menace to the health, moral and welfare of the people of this state and to the maintenance of public order within this state. Protection against this great hazard of our economic life can be provided in some measure by the required and systematic accumulation of funds during periods of employment to provide benefits to the unemployed during periods of unemployment and by encouragement of desirable stable employment. The enactment of this measure to provide for payment of benefits to persons unemployed through no fault of their own, to encourage stabilization in employment, and to provide for a state employment service is, therefore, essential to public welfare; and the same is declared to be a proper exercise of the police powers of the state."
Primarily, the question is whether under the proper interpretation of our Employment Security Act, employees who "went on strike" and were replaced within a week's time are eligible for unemployment benefits.
*534 Acts 1953, Ch. 177, § 16, p. 626 being § 52-1539c provides in part:
"An individual shall be ineligible for waiting period or benefit rights: for any week with respect to which an employee of the division, designated by the director and hereinafter referred to as the deputy, finds that his total or partial or part-total unemployment is due to a stoppage of work which exists because of a labor dispute at the factory, establishment, or other premises at which he was last employed; ...."
In the case of Sakrison et al. v. Pierce et al. (1947), 66 Ariz. 162, 185 P.2d 528, 173 A.L.R. 480, the Arizona Supreme Court construed a statute similar to ours and a factual situation which in many respects resembles the case at bar. In the Sakrison, case supra, 105 employees of a Hotel Company "went on strike" on November 7, 1946, and picketed the hotel. After November 19, 1946, the employer had fully resumed operations by replacing the strikers with other employees. However, during the thirteen day interim between November 6 and November 19, the strike forced the employer to drastically curtail its service to its patrons. The striking employees filed their claim for unemployment benefits after November 19, 1946, and were granted benefits from that date. The Statute of Arizona was similar to the Indiana Act in that an individual was disqualified for benefits "(d) For any week with respect to which the commission finds that his total or partial unemployment is due to a stoppage of work which exists because of a labor dispute, strike or lock-out at the factory, establishment, or other premises at which he is or was last employed ..." The decision of the court was based upon construction of the term "stoppage of work." It was held that "stoppage of work" refers to stoppage of work at the employer's establishment, not cessation of employees' labors; and that as there was not a stoppage of work after the employees were replaced, this provision of the Statute does not operate to disqualify employees who participate in a strike which does not result in a *535 stoppage of work. This result is supported by Lawrence Baking Co. v. Michigan U.C.C., 308 Mich. 198, 13 N.W.2d 260, 154 A.L.R. 600.
The Sakrison case, supra, and the Lawrence Baking Co. case, supra, were discussed in the case of Blakely v. Review Bd., Emp. Sec. Div. (1950), 120 Ind. App. 257, 90 N.E.2d 353. In the Blakely case, supra, this court in dictum stated:
"It seems to us that by their decision in both of the last mentioned cases the Supreme Courts of Arizona and Michigan, put the `cart before the horse' in that they completely ignored the import of the term `labor dispute,' as used in the section of the statute they were construing. That section was similar to § 52-1539c, supra. It seems obvious to us that the term `labor dispute' as used in this section necessarily implies the existence of the relationship of employer and employee. Ordinarily when such relationship has been terminated the section referred to is not applicable." (Our Emphasis)
John Slick testified that when the appellants did not report for work he replaced them within one week's time, as other people wanted work, and that when the strike terminated there was no work available for appellants even though they had not personally requested work after the strike.
Thus, it is apparent that the appellants were not temporarily replaced, but permanently replaced as the employer testified that work was not available after the strike was terminated. Therefor, the relationship of employer and employee was severed and the labor dispute section is not applicable. While this proposition as advanced in the Blakely case, supra, was merely dictum in that case, we feel the reasoning was sound and adhere to it in the case at bar.
We are of the opinion that this reasoning promotes the purpose of the Act, as where employees go on strike and are permanently replaced, they should not be disqualified from benefits under the Labor Dispute Section (§ 52-1539c). However, we do not feel that the appellants should automatically be qualified for unemployment benefits. In Frank Foundries *536 Corp. v. Rev. Bd. (1950), 119 Ind. App. 693, 88 N.E.2d 160 (Transfer denied), this court in discussing the purpose of the Act held:
"... it is intended to benefit those who are out of employment because the employer is unable, for reasons beyond the employees' control, to provide work, or the proffered work endangers the health, safety and morals of the employee, or the working conditions or wages are below the standards prevailing in the community for the same type of work. It is not intended to finance those who are willingly refusing to work, when work is available, because of a labor dispute."
The question remains as to whether the appellants left their work voluntarily and without good cause. Employees who voluntarily leave their work without good cause are not deprived of all benefits but are subjected to a longer waiting period. As stated in the Frank Foundries case, supra, the Act will benefit employees where the work available endangers the health, safety and morals of the employees, or the wages are substandard to those of the community in the same work. The testimony shows that the appellants left their work to induce recognition of a collective bargaining agent, because of low wages received by the appellants and the other strikers. The wages received by appellants ranged from $0.72 an hour to $1.25 an hour. Due to the general working conditions and refusal of the employer to recognize a bargaining agent, it can hardly be contended that the employees left their work without good cause.
On the basis that the evidence failed to disclose a work stoppage or an interruption of output, the finding of the Review Board was in error in concluding that a work stoppage ensued.
We agree with the appellees, in that the appellants are not entitled to benefits for periods prior to the filing of claims. "Claiming, registering, and reporting are necessary prerequisites to the right to receive benefits. `Availability for work' is an added requirement...." Walton v. Wilhelm (1950), *537 120 Ind. App. 218, 91 N.E.2d 373. Thus, the appellants will be entitled to benefits from the date they filed their respective claims.
The decision of the Review Board is reversed, and appellants are hereby adjudged entitled to benefits under the Employment Security Act at such time as provided by law, subject to the date applications for benefits were filed. The Review Board is hereby directed to enter findings, conclusions and an appropriate decision not inconsistent with this opinion.
Decision of the Review Board is reversed.
Prime, C.J., Smith, P.J., Carson, Faulconer, Mote and Wickens, JJ., concur. Hunter, J., concurs in result only.
NOTE.  Reported in 215 N.E.2d 355.