**WARNER PRESS, INC., Appellant,**

v.

**REVIEW BOARD OF the INDIANA EMPLOYMENT SECURITY DIVISION and Mark E. Mock et al., Appellees.**

No. 2–1278A439.

Court of Appeals of Indiana,
Third District.

Dec. 29, 1980.

Rehearing Denied Feb. 19, 1981.

Jack H. Rogers, John T. Neighbours, Roberts, Ryder, Rogers & Neighbours, Indianapolis, for appellant.

Theodore L. Sendak, Atty. Gen., Gordon E. White, Jr., Deputy Atty. Gen., Indianapolis, for Review Board of the Indiana Employment Security Division.

William R. Groth, Fillenwarth & Fillenwarth, Indianapolis, for amicus curiae.

STATON, Judge.

After striking Warner Press, Inc., Mark Mock and Lydia Wilkinson (hereinafter collectively referred to as "the claimants") filed claims for compensation under the Indiana Employment Security Act.[1] The claims were referred to the Review Board which held that the claimants were entitled to receive unemployment benefits. Warner Press appeals. We are called upon to determine: (1) whether there was a "stoppage of work" within the meaning of the Act so as to disqualify the claimants from receiving

1. IC 1971, 22–4–1–1 et seq. (Burns Code Ed., Supp.1977).

benefits; (2) the effect of the Review Board's failure to enter a finding concerning the claimants' availability for work; and (3) the extent of the Review Board's authority to award benefits in the light of the federal labor laws.

We affirm in part and remand in part.

## I.

### "Stoppage of Work"

Warner Press has presented public policy considerations which argue against the awarding of unemployment compensation to strikers. Whatever the merits of that portion of its argument may be, it is one which more properly should be presented to and considered by the elected officials whose function it is to draft or amend the appropriate legislation. Our function is simply to point out which route the legislature has chosen to travel.

The provision of the Act upon which Warner Press predicates its appeal is IC 1971, 22–4–15–3 (Burns Code Ed., Supp. 1977), particularly subsection (a) thereof, which reads in pertinent part as follows:

"An individual shall be ineligible for waiting period or benefit rights: for any week with respect to which ... his ... unemployment is due to a stoppage of work which exists because of a labor dispute. ..."

Warner Press contends that the phrase "stoppage of work" refers to the labors of the individual employees and that, because the claimants stopped working, that section operates to disqualify them from receiving benefits. The claimants contend that "stoppage of work" refers to the employer's operations as a whole. The Review Board applied the claimants' interpretation and, after finding that Warner Press' business "continued as usual and production was not affected" by the strike, concluded that 22–4–15–3 did not disqualify the claimants.

All fifty states have adopted unemployment compensation laws and most of them contain a provision similar to Indiana's denying benefits if the claimant's unemployment is due to a "stoppage of work which

exists because of a labor dispute." *See* Note, *Eligibility for Unemployment Benefits of Persons Involuntarily Unemployed Because of Labor Disputes*, 49 Columbia L.Rev. 550 (1949). The disqualification language and provision were taken by the various legislatures from a "model" bill prepared by the Committee on Economic Security which, in turn, had borrowed them from the British Unemployment Insurance Acts. Shadur, *Unemployment Benefits and the "Labor Dispute" Disqualification*, 17 U.Chi. L.Rev. 294 (1950). Prior to the enactment of the statutes in this country, the British courts had interpreted the phrase "stoppage of work" to mean a cessation or substantial curtailment of the employer's business. The overwhelming majority of states, including Indiana, have followed the British lead. Annot., 61 A.L.R.3d 693 (1975).

In *Carnegie–Illinois Steel Corp. v. The Review Board, Etc.* (1947), 117 Ind.App. 379, 72 N.E.2d 662, the court discussed the "stoppage of work" disqualification provision. The court noted that:

"Stoppage of work has been held to mean since the passage of the Indiana Employment Security Act a curtailment of production affecting unemployment... A stoppage of work commences "at the plant of the employer when a definite check in production operations occurs. ..."

A similar interpretation was approved in *Jackson v. Review Board of Indiana Employ. Sec. Div.* (1966), 138 Ind.App. 528, 215 N.E.2d 355.

The interpretation adopted in *Carnegie–Illinois* and *Jackson* is consistent with the rule of construction that the provisions of the Act are to be liberally construed in favor of the employee. *Bowen v. Review Bd. of Ind. Emp. Sec. Div.* (1977), Ind.App., 362 N.E.2d 1178. Furthermore, if, as Warner Press contends, the phrase "stoppage of work" referred to the employee's labors, it would be redundant in the sentence "his ... unemployment is due to a stoppage of work which exists because of a labor dispute." Such a construction would thus violate the rule that no part of a statute

should be treated as surplusage if it can be given a meaning reasonably consistent with the other parts of the statute. *Combs v. Cook* (1958), 238 Ind. 392, 151 N.E.2d 144. Additionally, an application of the interpretation urged by Warner Press would disqualify from the collection of benefits every employee who went on strike. That result would be inconsistent with an application of IC 1971, 22–4–15–3(e) (Burns Code Ed., Supp.1977), which extends eligibility to workers who were originally laid off but who have refused a recall to work because of a labor dispute. *Bowen, supra.*

The Review Board applied the correct interpretation of the phrase "stoppage of work."

## II.

### Availability for Work

■ As a prerequisite for the receipt of benefits, a claimant must be available for work. IC 1971, 22–4–14–3 (Burns Code Ed., Supp.1977). Whether a claimant has met the availability requirement is a question of fact to be determined by the Review Board. Because the Review Board has a duty to make those findings which are essential to support its award,[2] it is incumbent upon the Board to make a finding concerning a claimant's availability for work. Here, however, the Review Board failed to make such a finding. The case is therefore remanded to the Review Board for a determination as to whether the claimants were available for work.

## III.

### Pre–emption

■ Finally, Warner Press contends that the Review Board's authority to award unemployment compensation to strikers has been pre–empted by federal labor laws. That contention is predicated on the proposition that such payments significantly interfere with the collective bargaining procedures protected by the National Labor Relations Act. That argument was recently rejected by the United States Supreme Court in *New York Telephone Co. v. New York Department of Labor* (1979), 440 U.S. 519, 99 S.Ct. 1328, 59 L.Ed.2d 553 wherein the court held that payments to striking workers neither impermissibly infringe upon activities that are subject to regulation by the National Labor Relations Board nor involve any attempt by the state to regulate private conduct in the labor–management field.

The case is remanded to the Review Board for a determination of the claimants' availability for work; in all other respects the judgment of the Review Board is affirmed.

HOFFMAN, J., concurs with opinion.

GARRARD, P. J., dissents with opinion.

HOFFMAN, Judge, concurring.

I concur in the result reached by the majority in Issue I, concerning the labor dispute section of the Act, IC 1971, 22–4–15–3(a) (1979 Burns Supp.). I would, however, premise the conclusion that the work stoppage section is inapplicable to the facts at bar upon the existing precedent of *Jackson et al. v. Rev. Bd., etc.* (1966), 138 Ind. App. 528, 215 N.E.2d 355. *Jackson* involved a factual situation closely parallel to the instant case. Within that context the court sought to carry forth the purpose of the Employment Security Act by ruling that the statutory disallowance of benefits to claimants resulting from "stoppage of work which exists because of a labor dispute" must be interpreted to mean a cessation of the employer's business, rather than the curtailment of an individual employee's labors. The *Jackson* court found that because the evidence failed to disclose any work stoppage or any interruption of output, the section would not operate to disqualify the claimants for benefits.

Further, in *Jackson* it was determined that where permanent replacements had been hired to supplant strikers the employ-

---

**2.** *Cf.: Stoner v. Howard Sober, Inc.* (1954), 124 Ind.App. 581, 118 N.E.2d 504 (Industrial Board has duty to specifically find the facts upon each element necessary to support its award).

ment relationship would be sufficiently severed so as to render this section inapplicable. Such an interpretation of the statute appears to carry out the design of the Legislature in providing for unemployment benefits, and I would therefore reaffirm the precept of *Jackson, supra.*

GARRARD, Presiding Judge, dissenting.

The facts in this case are undisputed and simply stated. The difficulty arises in the proper application of the Employment Security Act (the Act) in view of the expressed dual intent of the legislature in providing unemployment compensation benefits. The legislative purpose is declared " . . . to provide for payment of benefits to persons unemployed through no fault of their own . . . ."[1] IC 22–4–1–1.

A representation election was conducted at the employer's plant at Anderson, Indiana and a union was certified as collective bargaining agent.[2] Collective bargaining occurred during 1976 but no contract was agreed upon. On May 2, 1977, the union called a strike and some 60 of the employer's approximately 240 employees left work. The strike terminated October 24, 1977.

During the strike the employer continued operating. It quickly replaced the striking employees. At the hearing an employer representative testified that there was virtually no interruption of production occasioned by the strike.

Both claimants participated in the strike.[3] Their claims for benefits were for a period prior to the termination of the strike. However, neither had been recalled to work at the time of the hearing in January 1978.

As a matter of federal law both Mock and Wilkinson were economic strikers.[4] As such, they were not entitled to be recalled when the strike ended if the employer had hired permanent replacements who filled their jobs. *N.L.R.B. v. Mackay Radio & Telegraph Co.* (1938), 304 U.S. 333, 58 S.Ct. 904, 82 L.Ed. 1381. Pursuant to 29 U.S.C. § 152(3) they did, however, retain their status as employees and the right to be recalled as openings developed at the plant. *N.L.R.B. v. Fleetwood Trailer Co.* (1967), 389 U.S. 375, 88 S.Ct. 543, 19 L.Ed.2d 614.

The general scheme of the Act is that where otherwise eligible, individuals are entitled to benefits unless they have voluntarily left their employment without good cause in connection with the work or have been discharged for just cause. However, the Act in IC 22–4–15–3 deals specially with unemployment situations which arise from labor disputes.[5]

1. The term "fault" is construed as referring to failure or volition, rather than something worthy of censure. *Walter Bledsoe Coal Co. v. Rev. Bd.* (1943), 221 Ind. 16, 46 N.E.2d 477.

2. The materials in the transcript do not disclose the composition of the bargaining unit. It presumably consisted of all production and maintenance employees less normal exclusions such as clerical and technical employees.

3. Mock testified that he participated. Wilkinson did not testify but on her application for benefits stated, "went out on strike when union called it."

4. An economic strike is one not caused or prolonged by an employer's unfair labor practices. *N.L.R.B. v. Pecheur Lozenge Co.* (Cir. 2, 1953), 209 F.2d 393, *cert. den.* 347 U.S. 953, 74 S.Ct. 678, 98 L.Ed. 1099.

5. "(a) An individual shall be ineligible for waiting period or benefit rights: for any week with respect to which an employee of the division, designated by the director and hereinafter referred to as the deputy, finds that his total or partial or part–total unemployment is due to a stoppage of work which exists because of a labor dispute at the factory, establishment, or other premises at which he was last employed;

(b) This section shall not apply to an individual if he has terminated his employment, or his employment has been terminated, with the employer involved in the labor dispute; or if the labor dispute which caused his unemployment has terminated and any period necessary to resume normal activities at his place of employment has elapsed; or if all of the following conditions exist: He is not participating in or financing or directly interested in the labor dispute which caused his unemployment; and he does not belong to a grade or class of workers of which, immediately before the commencement of his unemployment, there were members employed at the same premises as he, any of whom are participating in or financing or directly interested in the dispute; and he has not voluntarily stopped working, other than at the direction of his employer, in sympathy with employees in some other establishment or factory in which a labor dispute is in progress;

In seeking the proper application of the labor dispute provision we may draw upon several considerations.

Initially, it should be noted that the provision applies to the full range of claim situations which arise in the arena of labor disputes, including situations where the claimant remains an employee and where he does not; where he engages directly in the dispute and where he does not; and where the unemployment occurs during the dispute or afterwards. The statute should be construed with this broad purpose in mind.

Secondly, that portion of the statute dealing with labor disputes by necessity operates within the highly specialized area of labor relations law; an area dominated by federal statute and federal agency action. Under such circumstances, as pointed out by Mr. Justice Frankfurter, statutory language addressed to experts must be read in the way the experts would understand it. See N.L.R.B. v. Highland Park Mfg. Co. (1951), 341 U.S. 322, 326–327, 71 S.Ct. 758, 761, 95 L.Ed. 969 (Frankfurter, J., dissenting) quoting and applying Hodgson v. Corning Glass Works (Cir. 2, 1973), 474 F.2d 226, 231.

Finally, the policy declared by the legislature for interpretation of the Act is that individuals should not draw benefits where their unemployment results from their own voluntary actions, although the Act recognizes an exception where an individual voluntarily terminates his employ for good cause in connection with his work. See IC 22–4–15–1; Geckler v. Rev. Bd. (1963), 244 Ind. 473, 193 N.E.2d 357.

(c) If in any case separate branches of work which are commonly conducted as separate businesses in separate premises, are conducted in separate departments of the same premises each such department shall, for the purpose of this section, be deemed to be a separate factory, establishment, or other premises.

(d) Upon request of any claimant or employer involved in an issue arising under this section, the deputy shall, in any other case the deputy may, refer claims of individuals with respect to whom there is an issue of the application of this section to a referee who shall make the initial determination with respect thereto, in accordance with the procedure in IC 1971, 22–4–17–3.

A subsidiary policy is that the state, through the payment or withholding of benefits, should not be placed in the position of fostering or underwriting the position of either labor or management in a labor dispute between an employer and its employees. City Pattern v. Rev. Bd. (1970), 147 Ind.App. 636, 263 N.E.2d 218; Blakely v. Rev. Bd. (1950), 120 Ind.App. 257, 90 N.E.2d 353.

Thus, in applying the dual policy considerations involved in making benefits available to employees who are not voluntarily out of work, our decisions have construed IC 22–4–15–3 as leaving employees eligible for benefits where in the context of a labor dispute the employer engages in a lockout before the parties have reached an impasse in negotiations. See, e. g., Albett v. Rev. Bd. (1971), 150 Ind.App. 202, 275 N.E.2d 827 and cases cited therein. While this line of authority appears wholly illogical if our concern is merely to determine what is a "labor dispute," it is both logical and acceptable as effectuating the dual purpose and intent the legislature has expressed in the Act.

Thus, our Supreme Court has had opportunity to consider the Act's proper application to striking employees. In our leading decision on the subject, Walter Bledsoe Coal Co. v. Rev. Bd. (1943), 221 Ind. 16, 46 N.E.2d 477 the court examined the claims of coal miners who stopped work when their previous collective bargaining agreement expired and no new agreement had been reached. In reversing a determination of eligibility the court said,

(e) Notwithstanding any other provisions of this article [22–4–1–1 – 22–4–38–3], an individual shall not be ineligible for waiting period or benefit rights under this section solely by reason of his failure or refusal to apply for or to accept recall to work or reemployment with an employer during the continuance of a labor dispute at the factory, establishment, or other premises of the employer, if the individual's last separation from the employer occurred occurred [sic] prior to the start of the labor dispute and was permanent or for an indefinite period."

"It must be concluded that the purpose of the act was to provide benefits to those who were involuntarily out of employment, and not to finance those who were willingly and deliberately refusing to work because of a refusal of their employers to accede to demands for higher wages." 221 Ind. 16, 21, 46 N.E.2d 477, 479.

Similar expressions are contained in the decisions of this court. *See Blakely v. Rev. Bd.* (1950), 120 Ind.App. 257, 90 N.E.2d 353; *Frank Foundries Corp. v. Rev. Bd.* (1949), 119 Ind.App. 693, 88 N.E.2d 160.

In sum the claimants in the present appeal went on strike against their employer in an effort to secure better wages and working conditions and did so as a part of concerted activity at the behest of their labor union. Their unemployment for the period of the strike thus possesses all the attributes our legislature and court decisions have found should disqualify employees from benefits where, as the result of a labor dispute, they have voluntarily determined not to work.

Moreover, reasonable men would be forced to conclude that their conduct in going on strike resulted in a stoppage of work at their place of employment even if the stoppage persisted for only a day, a shift, or a portion of an hour. Thus, it is unnecessary for this court to consume itself in debate over whether a work stoppage refers to what occurs at the employer's establishment or merely the cessation of an employee's labors.[6]

The statute, of course, does not require that the work stoppage and the unemployment co–exist. The individual is disabled so long as the unemployment is *due* to the stoppage. From the evidence before the review board it appears that both claimants would have continued to be employed had they not elected to go on strike.

Despite the foregoing, the claimants insist that they are entitled to benefits by virtue of the decision in *Jackson v. Rev. Bd.* (1966), 138 Ind.App. 528, 215 N.E.2d 355.[7] In that case, as here, the claimants were strikers; the employer continued operating virtually without interruption and permanently replaced claimants; and the appellate court held the claimants entitled to benefits. In short, *Jackson* supports their claim for benefits.

However, I am forced to conclude that *Jackson* was wrongly decided and should be overruled. I say this for two reasons.

First, the *Jackson* court concluded that the labor dispute section of the Act had no application. It so held because the claimants were no longer considered employees since they were economic strikers for whom permanent replacements had been hired. 138 Ind.App. at 535, 215 N.E.2d at 362.[8] Since there was no evidence that the claimants had quit or been discharged they retained their employee status and recall rights as a matter of federal law as discussed *infra*. Thus, the *Jackson* decision was wrongly premised.

In addition the court in *Jackson* held that the question of eligibility was then to be determined upon whether the employees left for good cause in connection with their work. Citing a dictum from *Frank Foundries, supra*, the court stated that such cause existed if the employees left available work because of wages which were substandard to those paid generally in the community for the same work. While the opinion discloses the wage range of the striking employees, no evidence whatever is alluded to establishing those wages as substandard in the community. Thus, the opinion's conclusion that "[d]ue to the general working conditions, [low wages] and refusal ... to recognize a bargaining agent, it can hardly

---

**6.** It may be noted, however, that for employee action to constitute a labor dispute requires concerted activity and more than a single employee.

**7.** Neither transfer nor rehearing were requested.

**8.** IC 22–4–15–3(b) provides the labor dispute disqualification does not apply to individuals who have terminated their employment or who have been terminated by their employer.

be contended that [they] left their work without good cause" appears to be in direct contravention of the Supreme Court's decision in *Walter Bledsoe Coal, supra,* where the court emphasized the propriety of the disqualification, stating,

"They were unemployed because of their refusal of an offer of work for wages and under conditions identical with those provided in the expired contract." 221 Ind. 22, 46 N.E.2d 483.

*Jackson v. Rev. Bd.* should therefore be overruled.

The decision of the Review Board should be reversed and the claims for benefits prior to October 24, 1977 denied.