The PIERCE GOVERNOR COMPANY,
Employer-Appellant,

v.

REVIEW BOARD OF the INDIANA EMPLOYMENT SECURITY DIVISION, William H. Skinner, David L. Adams and Paul M. Hutson, as Members of and as constituting the Review Board of the Indiana Employment Security Division, Appellee,

James M. Adcock, et al. (77 Claimants), Claimants-Appellees.

No. 2–1180A378.

Court of Appeals of Indiana, Fourth District.

Oct. 7, 1981.

Martin T. Fletcher, F. L. Dennis Logan, Rothberg, Gallmeyer, Fruechtenicht & Logan, Fort Wayne, for employer-appellant.

Linley E. Pearson, Atty. Gen., Gordon R. Medlicott, Deputy Atty. Gen., Indianapolis, for appellee.

A. Bonner Brown, Marion, for claimants-appellees Mary E. Dubois, Carolyn Jones, Vera R. Miller and Ava White.

Nora L. Macey, Miles, Segal & Macey, Indianapolis, for claimants-appellees.

YOUNG, Judge.

Employer Pierce Governor appeals from the decision of the Review Board of Indiana Employment Security Division which found claimants eligible for unemployment benefits after January 1, 1977 because the work stoppage had ceased at Pierce Governor's plant as of that date. Two issues are presented for review:

1) Whether the Review Board incorrectly applied Ind.Code 22–4–15–3 as it existed in 1978 in determining that the employees' disqualification from benefits continued only as long as the employer's "stoppage of work".

2) Whether the conclusion that the "stoppage of work" ceased January 1, 1977 was unsupported by the evidence and contrary to law.

Appellees-Claimants were all employees of Pierce Governor prior to August 31, 1976. After April 1, 1976, the employees were represented by the United Auto Workers in contract negotiations. In late August, an impasse in negotiations developed over various issues which resulted in a strike at midnight on August 31, 1976. At the commencement of the strike, Pierce Governor had approximately 150 employees. Soon thereafter, it began hiring replacements. During the entire period,[1] it hired at least 600 employees in its efforts to replace strikers and continue production. Production was increased by hiring these replacements, but Pierce Governor claimed it never returned to full production, even though it was producing on a full time high volume scale on or about the first of the year. Pierce Governor had a full complement of employees early in 1977 but contends that the lack of trained employees prevented it from returning to normal operations. On February 23, 1978, Pierce Governor notified

---

1. The strike continued through January 6, 1978. The personnel manager testified that 600 employees were hired through October 1977.

the striking employees that the strike had terminated on January 6, 1978 and that all requests for reinstatement would be honored. Claimants sought unemployment compensation for the time over which the strike extended. The Review Board found claimants ineligible for benefits from August 31, 1976 through January 1, 1977 but awarded benefits for the period from January 2, 1977 to January 6, 1978 concluding that the work stoppage ceased January 1, 1977.

Pierce Governor contends that the Review Board erred in granting benefits to the striking employees from January 2, 1977 through the end of the strike because the Board applied an erroneous interpretation of the "stoppage of work" clause of I.C. 22–4–15–3(a).[2] Pierce Governor argues that this phrase refers to the labors of the employees rather than the operations of the employer. Claimants, on the other hand, contend that the phrase refers to an interruption in output at the employer's plant as a whole. The Review Board applied the claimant's interpretation in concluding that the work stoppage ceased when the employer had a full complement of employees and production had resumed.

In *Warner Press, Inc. v. Review Board of Ind. Emp. Sec. Div.*, (1980) Ind.App., 413 N.E.2d 1003, the interpretation of this phrase was discussed. The *Warner* court noted that a majority of states, including Indiana, have interpreted the phrase to mean a cessation or substantial curtailment of the employer's business. *Id.* at 1005, citing Annot., 61 A.L.R.3d 693 (1975). *See also Jackson v. Review Board of Ind. Emp. Sec. Div.*, (1966) 138 Ind.App. 528, 215 N.E.2d 355; *Carnegie-Illinois Steel Corp. v. The Review Board of Ind. Emp. Sec. Div.*,

(1947) 117 Ind.App. 379, 72 N.E.2d 662. Pierce Governor argues that these decisions are wrong because the leading Indiana Supreme Court case indicates that strikers are not entitled to benefits when their unemployment is the result of a voluntary choice to engage in a strike. *Walter Bledsoe Coal Co. v. Review Board of Ind. Emp. Sec. Div.*, (1943) 221 Ind. 16, 46 N.E.2d 477.

In *Bledsoe*, the employees rejected a company proposal that they continue to work under the terms and conditions of the labor contract that was soon to expire. Instead, they engaged in a strike. That court was also called upon to interpret the labor dispute disqualification section; however, the issue concerned the meaning of the term "labor dispute" and not "stoppage of work". The court recognized that the purpose of the act was to provide benefits to those who were involuntarily out of employment, and not to finance those who were willingly and deliberately refusing to work because of a failure of their employers to accede to demands for higher wages. *Id.* In making its decision, however, the *Bledsoe* court did not need to determine the meaning of the term "work stoppage" or its effect. Pierce Governor argues that the policies set forth in *Bledsoe* clearly indicate that the term must apply to the employees or not be given any effect at all. *Bledsoe* did not consider the issue as have other cases which indicate the opposite view. *See, e. g. Warner, supra; Jackson, supra; Carnegie-Illinois Steel, supra. See also Continental Oil Co. v. Board of Labor Appeals*, (1978) 178 Mont. 143, 582 P.2d 1236; *Totorica v. Western Equipment*, (1965) 88 Idaho 534, 401 P.2d 817.

Moreover, in view of the recent legislative amendment to this section,[3] after the long-standing interpretation referring

---

**2.** I.C. 22–4–15–3(a) provides in part:

"An individual shall be ineligible for waiting period or benefit rights: for any week with respect to which an employee of the division, designated by the director and hereinafter referred to as the deputy, finds that his total or partial or part-total unemployment is due to a stoppage of work which exists because of a labor dispute at the factory, establishment, or other premises at which he was last employed; . . . ."

**3.** The General Assembly in 1980 deleted the work stoppage language. I.C. 22–4–15–3 (Burns Supp. 1980) now reads:

"An employee shall be ineligible for waiting period or benefit rights: for any week with respect to which his total or partial or part-total unemployment is due to a labor dispute at the factory, establishment or other premises at which he was last employed."

to employer operations set out in *Carnegie-Illinois, supra,* we conclude that the phrase should be given effect as it applies to the employer's operations. A statutory amendment raises a presumption that the legislature intended to change the law unless it clearly appears that the amendment was made only to more clearly express their original intent. *Van Orman v. State,* (1981) Ind.App., 416 N.E.2d 1301. Furthermore, when a previous statute on a subject contains certain language, and a later statute on the same subject deletes the language, statutory construction indulges in the presumption that the legislature was cognizant of its presence and meaning and intended by the deletion to change the law. *Merimee v. Brumfield,* (1979) Ind.App., 397 N.E.2d 315. We find nothing which indicates that the amendment was made only to express more clearly the original intent. Nor do we find a recent appellate decision to which the legislature would have been responding. See, *e. g. Matter of Waltz' Estate,* (1980) Ind.App., 408 N.E.2d 558. In fact, the interpretation was first set out in *Carnegie-Illinois, supra.* Therefore, the amendment and rules of construction support the interpretation of the phrase as a reference to the employer's operations. The Review Board did not err in applying the term "work stoppage" to the employer's operations.[4]

Pierce Governor somewhat parenthetically argues that a claimant who leaves his employment pursuant to a strike has left his employment voluntarily without good cause within the meaning of I.C. 22–4–15–1. Similar contentions were presented in *Inter-Island-Resorts, Ltd. v. Akahane,* (1962) 46 Haw. 140, 377 P.2d 715 and *Totorica v. Western Equipment, supra.* The Supreme Court of Hawaii said:

"Moreover, the terms 'leaving work' or 'left his work' as used in unemployment compensation laws refer only to a severance of the employment relation and do not include a temporary interruption in the performance of services. * * * Absence from the job is not a leaving of work where the worker intends merely a temporary interruption in the employment * * * relation. Such is the case of strikers who have temporarily interrupted their employment because of a labor dispute. Under the prevailing view, they have not been deemed to have terminated the employment relationship and the voluntarily leaving disqualification has no application to them."

*Inter-Island, supra,* 377 P.2d at 724–725. See also *Continental Oil Co. v. Board of Labor Appeals,* (1978) 178 Mont. 143, 582 P.2d 1236; *T. R. Miller Mill Company v. Johns,* (1954) 261 Ala. 615, 75 So.2d 675; *Mark Hopkins, Inc. v. California Employment Com'n.,* (1944) 29 Cal.App.2d 495, 151 P.2d 229, 154 A.L.R. 1081; *Knight-Morley Corp. v. Michigan Employment Sec. Com'n.,* (1958) 352 Mich. 331, 89 N.W.2d 541; *Marathon Electric Mfg. Corp. v. Industrial Com'n.,* (1955) 269 Wis. 394, 69 N.W.2d 573.

Pierce Governor further argues that the interpretation of "stoppage of work" as referring to the place of employment would require an employer to subsidize the employees, or former employees, who are out on strike and thereby impair the policy of strict neutrality in labor disputes. *Warner, supra.* The countervailing argument is that under this criterion, when the strikers first qualify for benefits the employer has already resumed normal operations by the hiring of permanent replacements and the strike, as an economic weapon, has lost its potency. These are arguments involving policy and involve the legislature rather than the courts. *Id.* See also *Inter-Island, supra.*

Having addressed Pierce Governor's statutory construction arguments we now must determine if the Review Board's conclusion that the "stoppage of work" ceased January 1, 1977 was contrary to law or not sustained

4. *Sakrison v. Pierce,* (1947) 66 Ariz. 162, 185 P.2d 528 offers another rationale for resolving the conflict between the policy statement and the labor dispute disqualification where a statute expresses first a general intent and then an inconsistent particular intent, the latter will be taken as an exception from the former and both will stand. 1 Lewis' Sutherland on Statutory Construction, 2d Ed., par. 268; *Rodgers v. United States,* (1902) 185 U.S. 83, 22 S.Ct. 582, 46 L.Ed. 816.

by the evidence. Such an assertion raises both the sufficiency of the facts to sustain the decision and the sufficiency of the evidence to sustain the findings of fact. I.C. 22–4–17–12. Under this two-tier standard of review, the Review Board's "finding of ultimate fact" is the conclusion, and the "findings of basic facts" are the premises from which the Review Board deduced its conclusion. *Graham v. Review Board of Indiana Employment Security Division,* (1979) Ind.App., 386 N.E.2d 699.

> "At the first level of review, we examine only the relationship between the premises and the conclusion and ask if the Board's deduction is 'reasonable.' (Cites omitted.) The inquiry at this first level of review may be termed a 'question of law.' (Cites omitted.)
>
> "At the second level of review, we inquire into the nexus between the premises or findings of basic facts and the evidence presented to determine if the evidence justified those findings."

*Id.* at 701, (*quoting Gold Bond Bldg. Prod. Div., etc., v. Review Bd.,* (1976) 169 Ind. App. 478, 349 N.E.2d 258, 263. In making its decision the Review Board made the following findings of fact and conclusions of law:

> "The Review Board finds that as of midnight, August 31, 1976, claimants listed on attached sheet, 77 in number, were unemployed due to a strike and work stoppage caused by a labor dispute.
>
> "It further finds that soon after August 31, 1976, employer began hiring replacements for striking employees.
>
> "It further finds that by January 1, 1977, the employer had a full complement of employees, filling the vacancies of striking employees.
>
> "It further finds that by January 1, 1977, production had resumed and employer had achieved a level of employment commensurate to its pre-strike level.
>
> "It further finds that a work stoppage did not exist at employer's plant as of January 1, 1977.

> "It further finds that certain striking employees received picket duty pay.
>
> "The Review Board concludes that a work stoppage was in effect at employer's plant from midnight, August 31, 1976, to January 1, 1977.
>
> "It further concludes that the work stoppage ceased to exist as of January 1, 1977."

First, we must consider the findings of fact to determine if they are sufficient in law to support the ultimate finding that the work stoppage ceased as of January 1, 1977. A stoppage of work ceases when the employer has been able to resume normal operations. *Carnegie-Illinois Steel Corp., supra.* The disqualification under this section is not removed, however, if an employer, in an effort to keep his business in operation and to provide employment for employees of other departments who were not involved in the labor dispute, temporarily uses a different plan or method to obtain the results normally produced by them. *Blakely v. Review Board of Ind. Emp. Sec. Div.,* (1950) 120 Ind.App. 257, 90 N.E.2d 353. Thus, the cessation of the stoppage of work occurs when the employer successfully resumes normal operations. A temporary plan or method resulting in normal production would not qualify.

While the findings indicate that the employer had a full complement of employees and had resumed production, no finding indicates whether these hirings permitted the employer to return to normal business operations. Even though Pierce Governor was able to resume production, normal operations contemplate something more than production. *Blakely, supra. See, also Travis v. Grabiec,* (1972) 52 Ill.2d 175, 287 N.E.2d 468. The business operations must substantially conform to the standard or regular operations of the plant.[5] If the labor dispute interferes with the normal plan of operations, this disqualification is applicable.

---

5. Otherwise, production carried on by a skeletal work force working abnormal hours could be characterized as normal operations. However, courts have primarily focused on the employer's ability to successfully obtain replacement workers and to resume its principle pro-

To support the conclusion of work stoppage cessation there must be a finding which indicates a return to normal business operations.[6] Because this case has no such finding, it must be remanded for further findings.[7]

The Board must determine from the evidence if the claimants employees have carried their burden of proving that they have become qualified. *Aaron v. Review Board of Ind. Emp. Sec. Div.*, (1981) Ind. App., 416 N.E.2d 125. The evidence must establish that the employer has returned to normal business operations and that the unemployment is no longer the result of a work stoppage due to a labor dispute. *See, e. g. Frank Foundries Corp. v. Review Board of Ind. Emp. Sec. Div.*, (1950) 119 Ind.App. 693, 88 N.E.2d 160; *Auker v. Review Board of Ind. Emp. Sec. Div.*, (1947) 117 Ind.App. 486, 71 N.E.2d 629.

Remanded for further proceedings consistent with this opinion.

MILLER and SHIELDS (Sitting by designation), JJ., concur.

ductive function. *See, e. g., Totorica, supra; Travis, supra.*

**6.** The finding that a work stoppage had ceased is a legal conclusion and cannot be used to support that same conclusion.

**7.** We also note that a finding that claimants were available for work is essential for an award of benefits under I.C. 22–4–14–3. *Warner, supra.* The issue of whether claimants were available for work under the circumstances of this case was not before us on this appeal. *See, e. g. Tri-State Motor Tr. Co. v. Industrial Comm'n*, (1974) Mo.App., 509 S.W.2d 217.