Eleanor AARON, et al.,
Claimants-Appellants,

v.

REVIEW BOARD OF the INDIANA EM-
PLOYMENT SECURITY DIVISION,
William H. Skinner, David L. Adams and
Paul M. Hutson, as Members of and as
constituting the Review Board of the
Indiana Employment Security Division,
and Northern Indiana Public Service
Co., Appellees.

No. 2–1281A395.

Court of Appeals of Indiana,
First District.

Sept. 28, 1982.

Rehearing Denied Nov. 9, 1982.

Allan J. Mindel, Hirsh, Schwartzman,
Pannos & Mindel, Merrillville, for claim-
ants-appellants.

Frederick F. Eichhorn, Jr., David C. Jen-
sen, Peter L. Hatton, Eichhorn, Eichhorn &
Link, Hammond, for Northern Indiana Pub-
lic Service Co.

Linley E. Pearson, Atty. Gen., Indianapo-
lis, for Review Bd. of the Indiana Employ-
ment Sec. Div.

NEAL, Judge.

Claimants-appellants Eleanor Aaron, *et
al.* (claimants), who consist of approximate-
ly 4,000 employees of Northern Indiana
Public Service Co. (NIPSCO), appeal an ad-
verse decision in their claim for unemploy-
ment benefits rendered by the Review
Board of the Indiana Employment Security
Division (Review Board).

We affirm.

## STATEMENT OF THE FACTS

The Referee made findings of facts and
conclusions of law which were adopted by
the Review Board. In summary, the Refer-
ee found that all claimants involved were
employees of NIPSCO and members of the
United Steel Workers of America, AFL–
CIO–CLC. Their employment contract had
expired, and the union and NIPSCO were

engaged in collective bargaining. When an impasse in the bargaining was reached, the claimants went on strike on June 1, 1980. On June 16, 1980, Eleanor Aaron filed her claim for unemployment benefits. The parties concede that a labor dispute existed. The Referee found that from June 1 through the date of the hearing, there had been no normal operation of NIPSCO, and that normal operations had been severely disrupted through the entire time of the strike. However, NIPSCO provided service to its customers during the pendency of the labor dispute as required by the statute, Ind.Code 8-1-2-4. The claimants were provided an opportunity to continue work under the existing contract after its expiration on May 31, 1980, which opportunity claimants refused. The Referee established that the issue to be decided was whether or not there was a stoppage of work relating to the labor dispute, and then found that "... there was a definite check in production operations resulting from the labor dispute involved." His conclusion of law and decision are as follows:

> "CONCLUSION: From the foregoing findings it must be concluded that the claimants are, in fact, unemployed due to a stoppage of work which exists because of a labor dispute at the factory, establishment, or other premises at which they were last employed and, therefore, benefits must be denied accordingly.
> DECISION: The claims of the involved claimants should be denied in accordance with Chapter 15, Section 3, of the Indiana Employment Security Act."

Examination of the record reveals that the above findings and conclusions were supported by the following evidence. NIPSCO is a public utility engaged in the business of the sale of gas and electrical energy and related activity. It had 6,582 employees and personnel for normal operation, of which 4,498 struck; the remaining 2,084 employees were management, executive, supervisory, and non-union personnel who did not strike. With those non-striking personnel NIPSCO was able to maintain essential and necessary service to its customers by maintaining a skeleton force, moving the personnel as needed throughout the company's operation, and working them up to 18 hours a day. New and upgraded service was drastically reduced, and backlogs accumulated. Construction was halted. Some departments not deemed essential were temporarily closed. Vacations were cancelled. Only those tasks considered essential to the continued production and transmission of energy were done.

## ISSUES

Claimants made numerous assignments of error, all of which relate to the following two issues claimant presents for our review:

I. Whether pursuant to Ind.Code 22-4-15-3, the employees of Northern Indiana Public Service Company (hereinafter referred to an NIPSCO) were unemployed due to a stoppage of work existing because of a labor dispute, when NIPSCO continued to produce, acquire, and sell electric current and natural gas; send billings; collect revenues; repair outages; install and upgrade services; and perform all essential services.

II. Whether the disqualification of "left work voluntarily without good cause" as contained in Ind.Code 22-4-15-1 and the disqualification of "stoppage of work" as contained in Ind.Code 22-4-15-3 are mutually exclusive, and the Review Board erred in construing them together.

## DISCUSSION AND DECISION

*Issue I. Work stoppage*

 This issue is the core of the appeal. Ind.Code 22-4-15-3, in effect until July 6, 1980, contained a disqualification from benefits which provided, as relevant here:

> "An individual shall be ineligible for ... benefit rights: For any week ... that his ... unemployment is due to a stoppage

of work which exists because of a labor dispute...."[1]

A stoppage of work is defined as "a cessation or substantial curtailment of the employer's business." *Warner Press, Inc. v. Review Board of Indiana Employment Security Division*, (1980) Ind.App., 413 N.E.2d 1003; *Pierce Governor Company v. Review Board of Indiana Employment Security Division*, (1981) Ind.App., 426 N.E.2d 700. A stoppage of work commences at the plant of the employer when a definite check in production operations occurs. A stoppage of work ceases when operations are resumed on a normal basis. *Carnegie-Illinois Steel Corporation v. Review Board of Indiana Employment Security Division*, (1946) 117 Ind.App. 379, 72 N.E.2d 662. "Stoppage of work" focuses on the operations of the employer and not the employees' labor. *Warner Press, supra; Pierce Governor, supra.*

Claimants argue that since NIPSCO was able to maintain service to customers at the previous level, there was no "stoppage of work" as there was no curtailment of employer's business. We are of the opinion that *Pierce Governor* is dispositive. There, following a strike the employer hired replacements to continue production, and production was maintained. Judge Young, speaking for the court in a well reasoned opinion stated:

"First, we must consider the findings of fact to determine if they are sufficient in law to support the ultimate finding that the work stoppage ceased as of January 1, 1977. A stoppage of work ceases when the employer has been able to resume normal operations. *Carnegie-Illinois Steel Corp., supra.* The disqualification under this section is not removed, however, if an employer, in an effort to keep his business in operation and to provide employment for employees of other departments who were not involved in the labor dispute, temporarily uses a different plan or method to obtain the results normally produced by them. *Blakely v. Review Board of Ind. Emp. Sec. Div.,* (1950) 120 Ind.App. 257, 90 N.E.2d 353. Thus, the cessation of the stoppage of work occurs when the employer successfully resumes normal operations. A temporary plan or method resulting in normal production would not qualify.

While the findings indicate that the employer had a full complement of employees and had resumed production, no finding indicates whether these hirings permitted the employer to return to normal business operations. Even though Pierce Governor was able to resume production, normal operations contemplate something more than production. *Blakely, supra.* See, also *Travis v. Grabiec,* (1972) 52 Ill.2d 175, 287 N.E.2d 468. The business operations must substantially conform to the standard or regular operations of the plant. If the labor dispute interferes with the normal plan of operations, this disqualification is applicable.

To support the conclusion of work stoppage cessation there must be a finding which indicates a return to normal business operations. Because this case has no such finding, it must be remanded for further findings.

The Board must determine from the evidence if the claimants employees have carried their burden of proving that they have become qualified. *Aaron v. Review Board of Ind. Emp. Sec. Div.,* (1981) Ind. App., 416 N.E.2d 125. The evidence must establish that the employer has returned to normal business operations and that the unemployment is no longer the result of a work stoppage due to a labor dispute. *See, e.g. Frank Foundries Corp. v. Review Board of Ind. Emp. Sec. Div.,* (1950) 119 Ind.App. 693, 88 N.E.2d 160; *Auker v. Review Board of Ind. Emp. Sec. Div.,*

---

1. This section was amended effective July 6, 1980, to read:

"(a) An individual shall be ineligible for waiting period or benefit rights: For any week with respect to which his total or partial or part-total unemployment is due to a labor dispute at the factory, establishment, or other premises at which he was last employed." Ind.Code 22–4–15–3 (Supp.1981). Thus, the element of work stoppage is no longer relevant.

(1947) 117 Ind.App. 486, 71 N.E.2d 629." (Footnotes omitted.)

*Id.,* 426 N.E.2d at 704–5. In defining the cessation of a work stoppage *Pierce Governor* and *Blakely v. Review Board of Indiana Employment Security Division,* (1950) 120 Ind.App. 257, 90 N.E.2d 353 (trans. denied, emphasized that *normal* operations "contemplate something more than production." Temporary and different methods of operation resulting in normal production do not remove the disqualification. Clearly, the temporary methods employed by NIPSCO did not conform to its standards for the regular operation of its facilities.

Claimants concede the holding in *Pierce Governor* but contend that the case was erroneously decided. In support of their argument, they attempt to distinguish *Blakely,* relied on by *Pierce Governor,* and cite authority from other jurisdictions. We do not believe that the attempted distinctions are valid. We are of the opinion that *Pierce Governor* is controlling authority in this state, and is applicable to the case at bar.

*Issue II. "Leaving work without good cause" and "work stoppage" are mutually exclusive*

█ Under this issue claimants claim that the decision of the Review Board is contrary to law in that it equates voluntary unemployment with work stoppage. The voluntary unemployment disqualification is found in Ind.Code 22–4–15–1, and provides in pertinent part:

"... an individual shall be ineligible for waiting period or benefit rights: For the week in which he has left work voluntarily without good cause...." [2]

In its adopted findings the Review Board stated:

"The undisputed purpose of the Employment Security Act is to provide benefits to those who are unemployed through no fault of their own. In *Frank Foundries Corp. v. Review Board, Indiana Employ-*

*ment Security Division, et al,* (1949) 119 Ind.App. 693, 88 N.E.2d 160, the Court of Appeals stated:

'The purpose of the Act is to provide benefits for those who are *involuntarily out of employment.* In other words, it is intended to benefit those who are out of employment because the employer is unable, for reasons beyond the employees' control, to provide work, or the proffered work endangers the health, safety and morals of the employee, or the working conditions or wages are below the standards prevailing in the community for the same type of work. It is not intended to finance those who are willingly refusing to work, when work is available, because of a labor dispute.'

Chapter 15, Section 3 of the Act clearly states in pertinent part, as follows:

'An individual shall be ineligible for waiting period or benefit rights: [F]or any week with respect to which an employee of the Division, designated by the Director or hereinafter referred to as the Deputy, finds that his total or part unemployment is due to a stoppage of work which exists because of a labor dispute at the factory, establishment, or other premises at which he was last employed.' "

Claimants insist that the Review Board construed the two disqualification sections together, and in doing so committed error. *Frank Foundries Corporation v. Review Board, Indiana Employment Security Division,* (1949) 119 Ind.App. 693, 88 N.E.2d 160, was a case where benefits were denied because of a work stoppage resulting from a labor dispute.

Our reading of *Frank, Warner Press* and *Pierce Governor,* indicates that there is a similarity between voluntary unemployment and work stoppage in the sense that a strike because of a labor dispute which causes a work stoppage is a voluntary, al-

2. This portion of Ind.Code 22–4–15–1 (Supp. 1981) now reads:

"... an individual who has voluntarily left his employment without good cause ... is ineligible for waiting period or benefit rights for the week in which the disqualifing separation occurred...." (Effective July 6, 1980.)

though temporary, leaving of work which results in a disqualification. Such similarity is alluded to in *Frank,* quoted by the Review Board. However, as pointed out by Judge Young in *Pierce Governor,* a disqualification for leaving work with good cause under Ind.Code 22–4–15–1 refers to a severance in the employment relation, and not a temporary interruption due to a strike. Ind.Code 22–4–15–1 has no application in a strike situation. Reading the findings and conclusions as a whole, we are of the opinion that the Review Board's decision was based solely on work stoppage under Ind. Code 22–4–15–3.

For the above reasons, this cause is affirmed.

Affirmed.

RATLIFF, P.J., and ROBERTSON, J., concur.